# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMES R. FOUTS,

                                    Case No.: 23-cv-11868

Plaintiff,

                                    HON. GEORGE CARAM STEEH

v.

THE WARREN CITY COUNCIL;
THE WARREN CITY ELECTION
COMMISSION; ANTHONY G. FORLINI,
in his official capacity as MACOMB COUNTY
CLERK; and SONJA D. BUFFA, in her official
Capacity as WARREN CITY CLERK,
Defendants.

_____

| | |
|---|---|
| Nabih H. Ayad (P59518) | Michael S. Bogren (P34835) |
| William D. Savage (P82146) | Jeffrey M. Schroder (P63172) |
| AYAD LAW, P.L.L.C. | PLUNKETT COONEY, P.C. |
| Attorneys for Plaintiff | Attorneys for Warren City Council |
| 645 Griswold St. Ste. 2202 | 38505 Woodward Ave. #100 |
| Detroit, MI 42226 | Bloomfield Hills, MI 48304 |
| (313) 983-4600 | (248) 901-4000 |
| filing@ayadlawpllc.com | mbogren@plunkettcooney.com |
| | jschroder@plunkettcooney.com |

                                       Frank J. Krycia
                                       MACOMB COUNTY CORPORATION
                                       COUNSEL
                                       Attorney for Defendant Forlini
                                       One S. Main, 8th Floor
                                     Mt. Clemens, MI  48043
                                     (586) 469-6346
                                     frank.krycia@maconbgov.org

## DEFENDANT WARREN CITY COUNCIL'S MOTION TO DISMISS

The Warren City Council moves to dismiss the Plaintiff's complaint in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) as the Court lacks jurisdiction over this matter. Alternatively, the Defendant moves to dismiss the Plaintiff's complaint in its entirety with prejudice as the complaint fails to state a claim upon which relief can be granted.

This motion is based on the Brief in Support filed with this Motion and the legal authority and arguments contained in the Brief in Support.

The Defendant complied with LR 7.1(a)(1) by seeking concurrence in the relief sought in this motion by sending an email to counsel for Plaintiff, Mr. Nabih H. Ayad on Sunday, August 6, 2023. Mr. Ayad responded by email stating that Plaintiff did not concur in the relief sought.

Respectfully submitted,

DATED: August 7, 2023            PLUNKETT COONEY

     /s/ Michael S. Bogren
Michael S. Bogren (P34835)
Jeffrey M. Schroder (P63172)
PLUNKETT COONEY, P.C.
Attorneys for Warren City Council
38505 Woodward Ave. #100
Bloomfield Hills, MI 48304
(248) 901-4000
 mbogren@plunkettcooney.com
jschroder@plunkettcooney.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMES R. FOUTS,

Case No.: 23-cv-11868

Plaintiff,

HON. GEORGE CARAM STEEH

v.

THE WARREN CITY COUNCIL;
THE WARREN CITY ELECTION
COMMISSION; ANTHONY G. FORLINI,
in his official capacity as MACOMB COUNTY
CLERK; and SONJA D. BUFFA, in her official
Capacity as WARREN CITY CLERK,
Defendants.

_____

| | |
|---|---|
| Nabih H. Ayad (P59518) | Michael S. Bogren (P34835) |
| William D. Savage (P82146) | Jeffrey M. Schroder (P63172) |
| AYAD LAW, P.L.L.C. | PLUNKETT COONEY, P.C. |
| Attorneys for Plaintiff | Attorneys for Warren City Council |
| 645 Griswold St. Ste. 2202 | 38505 Woodward Ave. #100 |
| Detroit, MI 42226 | Bloomfield Hills, MI 48304 |
| (313) 983-4600 | (248) 901-4000 |
| filing@ayadlawpllc.com | mbogren@plunkettcooney.com |
| | jschroder@plunkettcooney.com |

Frank J. Krycia
MACOMB COUNTY CORPORATION
COUNSEL
Attorney for Defendant Forlini
One S. Main, 8th Floor
Mt. Clemens, MI  48043
(586) 469-6346
frank.krycia@maconbgov.org

## DEFENDANT WARREN CITY COUNCIL'S  BRIEF IN SUPPORT OF MOTION TO DISMISS

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether this Court lacks jurisdiction based on the *Rooker-Feldman* doctrine?

2. Whether issue preclusion (collateral estoppel) requires dismissal of the Plaintiff's complaint where the issue of whether Plaintiff can appear on the 2023 mayoral election ballot has been determined in a previous lawsuit?

3. Whether the Plaintiff's claims are barred by the *Purcell* doctrine?

4. Whether the First Amendment claims asserted in Count I of the Plaintiff's complaint fail to state a claim upon which relief can be granted?

5. Whether the Fifth Amendment Due Process claims asserted in Count II of the Plaintiff's Complaint fail to state a claim upon which relief can be granted?

6. Whether the Plaintiff's Fourteenth Amendment equal protection claims asserted in Count III fail to state a claim upon which relief can be granted?

7. Whether the declaratory judgment claim asserted in Count IV fails to state a claim upon which relief can be granted?

## CONTROLLING AUTHORITY

Issue 1.   *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003); *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

Issue 2.   *Mecosta County Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 509 Mich. 276, 283, 983 N.W.2d 401, 406 (2022).

Issue 3.   *Purcell v. Gonzalez*, 549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006).

Issue 4.   *Kowall v. Benson*, 18 F.4th 542, 547–48 (6th Cir. 2021).

Issue 5.   *Scott v. Clay County, Tenn.*, 205 F.3d 867, 873 (6th Cir. 2000); *People v. Smith*, 502 Mich. 624, 638, 918 N.W.2d 718, 726 (Mich. 2018).

Issue 6.   *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023).

Issue 7.   *Keene Group, Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 310 (6th Cir. 2021).

## STATEMENT OF FACTS

The following facts alleged in the Plaintiff's complaint are accepted as true for purposes of this motion:

Plaintiff is the current mayor of the City of Warren, serving his fourth term in office. (ECF No. 1, PageID.2, ¶ 3). A primary election will be held in the City of Warren on August 8, 2023 to determine the candidates for the office of mayor in the November 7, 2023 general election. (*Id.*, PageID.3, ¶ 9). Plaintiff had intended to run for a fifth term as mayor. (*Id.*, PageID.4, ¶ 10). In 2020 the electorate of the City of Warren adopted a Charter amendment that imposed a three-term limit on the office of mayor. (*Id.*, ¶¶ 13, 14). The Warren City Clerk took steps to include Plaintiff as a candidate in the 2023 mayoral election. (*Id.*, PageID.9, ¶ 41). In response, the Warren City Council sued the Warren City Clerk and the Macomb County Clerk to require them to remove the Plaintiff's name from the 2023 ballot as ineligible under the Charter's three-term limit. (*Id.*, ¶ 15; PageID.10, ¶ 42). The Michigan Court of Appeals in a published opinion ruled for the City Council, finding Plaintiff to be ineligible as a candidate for a fifth term as mayor, and granted mandamus ordering the clerks to remove Plaintiff's name from the ballot. (*Id.*, PageID.10, ¶ 43; **Ex. A**, *Warren City Council v. Buffa*, Michigan Court of Appeals, No. 365488, 2023 WL 3046530 (Apr. 21, 2023). The defendants applied for leave to appeal to the Michigan Supreme

Court. That Court denied the application for leave to appeal on May 17, 2023. (**Ex. B**).

Plaintiff has now filed suit in the United States District Court for the Eastern District of Michigan alleging the decision of the Michigan Court of Appeals violated his federal constitutional rights. Plaintiff is requesting the results of the August 8, 2023 primary essentially be declared a nullity and that a special election be ordered by this Court which would include Plaintiff as a candidate on the ballot. (ECF No. 8, PageID.45).

The Warren City Council now brings this motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6).

## I.   THIS COURT LACKS JURISDICTION OVER THIS MATTER BASED ON THE *ROOKER-FELDMAN* DOCTRINE AND PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(1).

The *Rooker–Feldman* doctrine has evolved from two Supreme Court cases which establish that 'lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings. *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003). "The purpose of the doctrine is to prevent 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal

rights.' [Citations omitted]." *Hood*, 341 F.3d at 597. As this Cout recently explained in *Gooding v. Parole Bd.*, No. 2:23-CV-10949, 2023 WL 4206073, at *2 (E.D. Mich. June 27, 2023) (Steeh, J.):

> 'The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by "'state-court losers'" challenging "'state-court judgments rendered before the district court proceedings commenced."'" *...* "**If the source of the injury is that state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction**. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

(Emphasis added).

Here, Plaintiff explicitly alleges and admits the source of his alleged injury is the Michigan Court of Appeals' decision (and by implication the denial of his application for leave to appeal by the Michigan Supreme Court). (Complaint, ¶¶ 42, 43, 52, 54, 58, 59). Specifically, in paragraph 60 the Plaintiff alleges:

> "The Michigan Court of Appeals misapplied the law when it ruled that that 2020 charter amendment did not affect a vested right of Plaintiff, when Plaintiff has a constitutional right to be a ***candidate*** for the Mayor of Warren."

Plaintiff is simply wrong that there is a constitutional right to be a candidate for the office of mayor (no such constitutional right exists), but his allegation in paragraph 60 shows that the source of his alleged injury is the Michigan Court of Appeals' decision.

In paragraph 66 the Plaintiff reiterates the source of his injury is the Michigan Court of Appeals' decision, where he alleges the Court of Appeals' decision is the source of his due process claim:

"So too did **the decision** in Defendant Council's lawsuit misapply the law of Plaintiff's rights to due process under the Fifth Amendment." (Emphasis added).

In paragraph 71 Plaintiff alleges the Court of Appeals "**misapplied the law, in violation of Plaintiff's due process rights** ..." (Emphasis added). In paragraph 76 the Plaintiff then alleges the Michigan Court of Appeals "misapplied the law of retroactivity." Finally, in paragraph 77 Plaintiff alleges: that "**the Michigan Court of Appeals supposed 'prospective' use of the 2020 charter amendment**" misapplied the law of the state of Michigan, the law of the country, and common sense. (Emphasis added).

In an apparent attempt to circumvent the application of the *Rooker – Feldman* doctrine in this case, Plaintiff alleges the Defendants acted illegally by "suing the Macomb County Clerk and the City of Warren Clerk to force them to exclude Plaintiff from the 2023 ballot." (Complaint, ¶ 87). This seems to be an attempt to identify "some other source of injury, such as a third party's actions." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). There are two primary flaws in that clumsy attempt to avoid *Rooker-Feldman*. First,

Defendants did not act "unlawfully;" they prevailed in the Michigan courts and – unless the First Amendment right of access to the courts has been abolished without anyone noticing – filing a lawsuit is not illegal. The second flaw in Plaintiff's attempt to circumvent *Rooker-Feldman* is that if the opposing party in the state court lawsuit a plaintiff subsequently challenges in federal court qualifies as a "third party" inflicting an independent harm, then *Rooker-Feldman* is meaningless. Lawsuits require adverse parties. Under Plaintiff's theory, *Rooker-Feldman* could never divest a federal court of jurisdiction because the opposing party in the challenged state court lawsuit would always be a "third party" causing independent harm. That is not the law.

The Sixth Circuit has stated that a "court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.' *Evans*, 424 Fed.Appx. at 539." *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012). The relief Plaintiff seeks in this lawsuit is the same relief that was denied by the Michigan courts: appearance on the ballot to run for a fifth term as mayor. This case falls squarely in the holding of the Sixth Circuit in *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 490 (6th Cir. 2005):

> Besides being utterly frivolous, the plaintiffs' claims are 'predicated on their conviction that the state courts were wrong' and, therefore, satisfy 'the very definition' of a case requiring *Rooker–Feldman* abstention. *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937–938 (6th Cir. 2002).

That is precisely the situation here. Plaintiff's entire complaint is predicated on the "conviction that the state courts were wrong." *Rooker-Feldman* should apply.

*Rooker-Feldman* applies here even though Plaintiff was not a named party in the state court suit. Despite the general rule that *Rooker-Feldman* only applies to bar a federal plaintiff's claim when he was a party in the state court action – *Johnson v. De Grandy*, 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) – exceptions exist and apply here. Plaintiff was not a direct party to the state court action. But the question then becomes whether Plaintiff was in privity with a party in the state court proceeding. The Sixth Circuit has defined a privy as either (1) a successor in interest; (2) a nonparty who controlled the original suit; or (3) a nonparty who is adequately represented by a party in the original suit. *Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999). The United States Supreme Court has held that one can be considered in privity to a party in previous litigation where that person's interests were adequately represented by someone with the same interests who was a party. *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798, 116 S. Ct. 1761, 1766, 135 L. Ed. 2d 76 (1996).

Here, Plaintiff's interests were adequately represented by the Clerk in the state court proceedings as the two parties' interests in whether Plaintiff should be included as a candidate in the mayoral election completely overlap. See, *McCormick v. Braverman*, 451 F.3d 382, 396 (6th Cir. 2006). The only issue being contested in the *Buffa* litigation was whether Plaintiff could appear on the ballot in the 2023 mayoral election. Therefore, the fact Plaintiff was not a named party in the state court proceedings does not defeat application of the *Rooker-Feldman* doctrine.

The fact that Plaintiff seeks damages in this case does not defeat *Rooker-Feldman*. Plaintiff's complaint still fits squarely in the framework announced by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005):

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers **complaining of injuries caused by state-court judgments** rendered before the district court proceedings commenced and **inviting district court review and rejection of those judgments**.

(Emphasis added). In cases decided since *Exxon* that have found *Rooker-Feldman* to be inapplicable, either different parties were alleged to have caused the harm, or the actions forming the basis of the subsequent lawsuit were not the underlying state court judgment. "[T]he pertinent inquiry after *Exxon* is

whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment." *Kovacic v. Cuyahoga County Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 309 (6th Cir. 2010). In *Kovacic*, the Sixth Circuit held *Rooker-Feldman* did not bar children's claims they had been subjected to constitutional violations when they were removed from their mother's custody because the focus of the lawsuit was not the custody order but was instead the conduct of the social workers *that led up to* the custody order *Id.* at 310.

In *Hohenberg v. Shelby County, Tennessee*, 68 F.4th 336 (6th Cir. 2023), the Sixth Circuit held *Rooker-Feldman* did not apply where homeowners sued a state court and the county after numerous code violations resulted in demolition of a residence. The plaintiffs sought damages and declaratory relief. *Id.* at 338. Holding *Rooker-Feldman* did not bar the plaintiffs' claims, the Sixth Circuit explained the plaintiffs' injuries did not stem from state-court judgments, but from the allegedly wrongful actions and omissions that **led to** the judgments. *Id.*

In this case, in contrast, it is the state court judgment itself that Plaintiff alleges caused the claimed injury. Plaintiff seeks to have this Court intervene and strike down the state court's judgment. The relief Plaintiff seeks – having

his name added to the ballot – is the precise relief the state court judgment denied. The demand for monetary damages also grows out of the state court's judgment, not an independent act on the part of any defendant.

To put this into a different context, if the state court judgment had been adverse to the City Council, the Plaintiff would have sustained no "injury." He would be on the ballot. In the cases the Sixth Circuit has found *Rooker-Feldman* inapplicable, the substance of the state court judgment was immaterial. In both *Kovacic* and *Hohenberg* a different state court judgment would not have erased the constitutional violations alleged. Here, a different state court judgment would have given the Plaintiff no basis for alleging a constitutional violation. It is the substance of the state court judgment that **caused** the injuries Plaintiff now asserts. As a result, *Rooker-Feldman* bars his claims.

## II.    EVEN ASSUMING THIS COURT HAS JURISDICTION, THE PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS THE ISSUE PRECLUSION DOCTRINE PREVENTS THE PLAINTIFF FROM RELITIGATING WHETHER HE SHOULD BE INCLUDED AS A CANDIDATE IN THE MAYORAL ELECTION.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to give state court judgments the same preclusive effect that the state would afford such judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, *supra*, 544 U.S. at 293; *Hohenberg supra,* 68 F.4th at 339.

9

In *Mecosta County Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 509 Mich. 276, 283, 983 N.W.2d 401, 406 (2022), the Michigan Supreme Court reiterated the elements of collateral estoppel: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment,' (2) the parties or privies "'must have had a full [and fair] opportunity to litigate the issue,'" and (3) "'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-684, 677 N.W.2d 843 (2004)." "[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, '[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.'" *Id.*, at 684–685 (cleaned up).

"To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v. State*, 470 Mich. 105, 122, 680 N.W.2d 386, 396 (2004). The Supreme Court explained: "… a perfect identity of the parties is not required, only a 'substantial identity of interests' that are adequately presented and protected by the first litigant." *Id.* The Supreme Court gave the example of litigation over the meaning of a legislative act. The court stated the interests of

10

one party challenging the enactment were "indistinguishable" from later parties challenging it. *Id*.

Here, all the elements of issue preclusion are present. A question of fact essential to the judgment was actually litigated: did the 2020 mayoral term limit amendment apply to the Plaintiff? That question was answered in the affirmative. The parties had a full and fair opportunity to litigate the question, which ended in a judgment for the City Council. And while the Plaintiff was not a named party, he was in privity to Clerk Buffa because their interests (placing Plaintiff on the ballot) were identical and that position was "adequately presented and protected" by Buffa. Finally, mutuality of estoppel exists because an adverse ruling in the state court litigation would be binding on the City Council.

Since the state court litigation has already decided whether the 2020 mayoral term limit applies to Plaintiff (it does) and prevents him from appearing on the ballot for the 2023 election, Plaintiff is collaterally estopped from trying to relitigate that issue in this case. Unless Plaintiff can relitigate that issue and obtain a different result (he cannot), his complaint fails to state a claim upon which relief can be granted.

### III.   THE PLAINTIFF'S COMPLAINT IS BARRED BY THE PURCELL DOCTRINE.

11

The United States Supreme Court recently reiterated its longstanding admonition "that lower federal courts should ordinarily not alter the election rules on the eve of an election. See *Purcell v. Gonzalez*, 549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam); *Frank v. Walker*, 574 U.S. 929, 135 S.Ct. 7, 190 L.Ed.2d 245 (2014); *Veasey v. Perry*, 574 U. S. ––––, 135 S.Ct. 9, 190 L.Ed.2d 283 (2014)." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 206 L. Ed. 2d 452, 140 S. Ct. 1205, 1207 (2020). The Sixth Circuit has similarly held that federal courts will not act on the eve of elections to disrupt them when a litigant has unreasonably delayed in filing suit:

> When an election is 'imminen[t]' and when there is 'inadequate time to resolve [ ] factual disputes' and legal disputes, courts will generally decline to grant an injunction to alter a State's established election procedures. See *Purcell v. Gonzalez*, 549 U.S. 1, 5–6, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam). That is especially true when a plaintiff has unreasonably delayed bringing his claim, as Crookston most assuredly has. See *Operating Engineers Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1053 (6th Cir. 2015); *Nader v. Blackwell*, 230 F.3d 833, 835 (6th Cir. 2000); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980). Call it what you will—laches, the *Purcell* principle, or common sense— the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.

*Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). Here, Plaintiff has been well-aware of the Michigan Court of Appeals' ruling and denial of leave to appeal by the Michigan Supreme Court since at least May 18, 2023 when he held a press conference addressing the rulings. https://youtu.be/KfntWu_TT3U

Plaintiff offers no excuse for waiting until six days before the election to file this lawsuit. Counsel for Plaintiff states in the complaint that he was only recently retained to represent the Plaintiff in this litigation. But, the question is not when Plaintiff's counsel was retained; the question is why Plaintiff waited from May 2023 when the Michigan Supreme Court denied Plaintiff's application for leave to appeal until August 2, 2023 to challenge the election. The only answer to that question offered by the Plaintiff is silence. The timing of the challenge alone should defeat the Plaintiff's untimely request for the extraordinary relief sought.

In the same vein, the doctrine of laches applies to claims challenging elections.  "Laches arises from an extended failure to exercise a right to the detriment of another party," *Ottawa Tribe of Oklahoma v. Logan*, 577 F.3d 634, 639 n. 6 (6th Cir. 2009). A party asserting laches must show (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *Bridgeport Music, Inc. v. Justin Combs. Pub.*, 507 F.3d 470, 493 (6th Cir. 2007).

The primary election at issue has been scheduled for many months according to a predictable, known state law. Candidates have been certified and ballots have been printed. As stated above, Plaintiff knew he was disqualified from this election in May 2023. He also knew (or by looking at a calendar would

13

have known) this primary election would be held on August 8, 2023. Despite that, Plaintiff did nothing until August 2, 2023 – six days before the election – to sue. The Plaintiff's lack of diligence is patent.

Defendant would be prejudiced by the relief Plaintiff seeks. The relief Plaintiff seeks would interfere with the City's ability to run an orderly election. See, *McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012) ("[S]uch an injunction would interfere with Land's ability to run an orderly election.") Moreover, the relief Plaintiff seeks would create confusion at a minimum and the specter of chaos. The thousands of votes already cast and those to be cast on August 8, 2023 for mayoral candidates would be a nullity.

No one would know the identity of the candidates at the November election despite having cast ballots. Additionally, the election for the mayoral candidates would have to be repeated at significant cost to the City. More importantly, people who voted in the regularly scheduled August 8 election might be disenfranchised by not voting in an unprecedented "special" election ordered by the Court. On balance Plaintiff's claims are barred by laches and should be dismissed.

## SUBSTANTIVE LEGAL DEFECTS IN PLAINTIFF'S CLAIMS

Plaintiff has asserted four counts in his complaint. Count I is titled "Violation of First Amendment right to political expression and association (As

to all Defendants)." Count II is titled "Violation of Fifth Amendment right to be free from imposition of a legal disability without due process of law (As to all Defendants)." Count III is titled "Violation of Fourteenth Amendment right to equal application of the laws prohibiting retroactive application of statutes to Plaintiff (As to all Defendants)." Count IV is titled "Declaratory Judgment (As to all Defendants)." Defendant will address these claims seriatim.

### IV.   THE FIRST AMENDMENT CLAIMS ASSERTED IN COUNT I FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff asserts in Count I that his First Amendment rights to free speech and association are being violated because "he is being prohibited from participating as a candidate for Mayor of the City of Warren ...." (Complaint, ¶ 86). Plaintiff is prohibited from running for the office of mayor because of a 2020 amendment to the Warren City Charter that placed term limits on that office. (Complaint, ¶¶ 32, 36, 37, 42, 43). As discussed above, the Michigan Court of Appeals ruled in a **published** decision that Plaintiff was ineligible to run for reelection in 2023.  (Ex. 1. "Buffa is hereby ordered to immediately disqualify Mayor Fouts as a candidate for mayor in 2023 and not place his name on the ballot for election.")

The Supreme Court and the Sixth Circuit have consistently held that term limits applied to candidates in state and local elections do not implicate

15

protected constitutional rights and do not offend the Constitution. Equally important, the Supreme Court has ruled that a state's decision to limit the terms of its elected officials raises no substantial federal question. *State ex rel Maloney v. McCartney*, 159 W.Va. 513, 223 S.E.2d 607, appeal dismissed, *Moore v. McCartney*, 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976). There, the governor of West Virginia challenged term limits on the governor's office, arguing limiting his term in office denied equal protection to voters who wished to reelect him. The West Virginia Supreme Court upheld the term limits. The governor appealed to the United States Supreme Court. In a one-sentence opinion, the Court held that "[t]he appeal is dismissed for want of a substantial federal question." *Moore*, 425 U.S. at 946, 96 S.Ct. 1689. A summary dismissal by the Supreme Court "binds all lower courts until subsequent Supreme Court decisions suggest otherwise. *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977)." *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 919 (6th Cir. 1998). Thus, the Supreme Court has held a litigant's challenge to state law term limits is not a substantial federal question.

The Sixth Circuit has held that term limits are part of a state's power "to prescribe qualifications for its officeholders," *Citizens for Legislative Choice*, 144 F.3d at 924, rather than a "regulatory procedure relating to the election process." *Id*. Just as a state has the right to impose neutral candidacy

16

qualifications such as age or residence, (see, e.g. *Gregory v. Ashcroft*, 501 U.S. 452, 472, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991)), term limits are also constitutionally permissible. *Miller*, 144 F.3d at 923 – 924.

*Kowall v. Benson*, 18 F.4th 542, 547–48 (6th Cir. 2021), again addressed term limits in Michigan. The Sixth Circuit reiterated *Miller's* holding that term limits are constitutionally permissible, and candidates have no constitutional right to run for office:

> This [term limit] qualification gives us no reason to apply heightened scrutiny, because candidates do not have a fundamental right to run for office. *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) ('Far from recognizing candidacy as a fundamental right, we have held that the existence of barriers to a candidate's access to the ballot does not of itself compel close scrutiny.' (cleaned up)); *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989) ('Running for office is not a fundamental right.' (cleaned up)). Without such a fundamental right at issue, we revert to the baseline: rational basis.

The City of Warren's Charter provision imposing term limits on the mayor's office passes rational basis review. Term limits are rationally related to the City's interest to "foster electoral competition by reducing the advantages of incumbency and encouraging new candidates. ... [L]ifetime term limits will also enhance the lawmaking process by dislodging entrenched leaders, curbing special interest groups, and decreasing political careerism." *Miller*, 144 F.3d at 923. Because the term limits provision applies to anyone who holds the

position and "represents a policy choice . . . made by that branch of Government vested with the power to make such choices," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 592, 99 S. Ct. 1355, 1369, 59 L. Ed. 2d 587 (1979), it passes rational basis review.

### V.   COUNT II OF PLAINTIFF'S COMPLAINT ASSERTING A DUE PROCESS CLAIM UNDER THE FIFTH AMENDMENT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff's invocation of the Fifth Amendment's due process clause is puzzling since it applies only to actions of the federal government and has no application to state action. *Scott v. Clay County, Tenn.*, 205 F.3d 867, 873 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government. See generally *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Ergo, the instant complainant's citation to the Fifth Amendment Due Process Clause was a nullity ..."); *Palmer v. Schuette*, 768 F. App'x 422, 426–427 (6th Cir. 2019) ("While the Fifth Amendment undeniably contains a due process guarantee, it applies to federal, not state, officials ..."). On that basis alone, Plaintiff cannot prevail on Count II. But even construing Count II as a procedural due process claim under

the Fourteenth Amendment, it fails to state a claim upon which relief can be granted.

To assert a procedural due process claim a plaintiff must show that he was deprived "of a protected property interest without 'adequate pre-deprivation procedural rights.' *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019)." *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 467 (6th Cir. 2023). To qualify as a protected property interest a person must have "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Hasanaj v. Detroit Pub. Sch. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022).

Plaintiff alleges in paragraph 75 of the complaint that his "disqualification from both the candidacy and the office of the Mayor of the City of Warren indisputably constitutes a legal disability." Both the Supreme Court and the Sixth Circuit have squarely held that holding public office is not a property interest giving rise to a procedural due process claim. *Taylor v. Beckham*, 178 U.S. 548, 576, 20 S.Ct. 890, 44 L.Ed. 1187 (1900); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972); *Houchens v. Beshear*, 850 F. App'x 340, 343 (6th Cir. 2021). And since property interests are created by state law it is noteworthy (and dispositive) that the Michigan Supreme Court has held that holding public office is not a property interest. *People v. Smith*, 502 Mich. 624, 638, 918 N.W.2d 718,

19

726 (Mich. 2018) ("the law has long been clear that there is no property interest in holding public office.")

The United States Supreme Court has also held that a candidate does not have a viable procedural due process claim for being denied the ability to be a candidate for public office. *Snowden v. Hughes*, 321 U.S. 1, 7, 64 S. Ct. 397, 400, 88 L. Ed. 497 (1944) ("More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause. *Taylor and Marshall v. Beck*ham, 178 U.S. 548, 20 S.Ct. 1009, 44 L.Ed. 1187.")

Perhaps recognizing the absence of a colorable procedural due process claim, Plaintiff attempts to couch his claim as the "right to be free from imposition of a legal disability without due process of law." In paragraph 93 Plaintiff alleges he has a right under the Fifth Amendment "to not suffer retroactive legal disabilities arising out of past considerations." The flaws in this claim are legion.

First, despite Plaintiff's constant refrain that the Court of Appeals' decision applied the charter amendment retroactively, it did no such thing. The Court of Appeals explicitly stated:

> [T]he Council here **seeks only prospective application** of the amendment. It did not retroactively seek to disrupt Mayor Fouts' fourth term in office after the 2019 election once the amendment

20

passed in 2020. ... Prospectively, the terms served before the amendment's passage will be counted. Thus, **the amendment need not be applied retrospectively to afford the Council relief**.

(Ex. 1 at *9). (Emphasis added). In its conclusion the Court of Appeals reiterated this point: "Additionally, **a prospective application of the charter is applied here,** and its reliance on antecedent events does not run afoul of the general rule against retroactivity." *Id*. at *11. (Emphasis added). Thus, the lynchpin of Plaintiff's due process claim does not exist.

Plaintiff is also not suffering from a "legal disability." For purposes of federal civil rights claims the Supreme Court has held that Michigan defines "legal disability" as infancy (under the age of 18), insanity, and imprisonment. *Hardin v. Straub*, 490 U.S. 536, 540, 109 S. Ct. 1998, 2001, 104 L. Ed. 2d 582 (1989). Unsurprisingly, the inability to be a candidate for elected office is not recognized as a legal disability.

Aside from the fact that Plaintiff does not have a legal disability and the fact that the Charter provision was not applied retroactively, Plaintiff has also pled a claim that does not exist. No federal court has entertained, let alone recognized, a claim for a "right to be free from imposition of a legal disability without due process of law." Count II fails to state a claim upon which relief can be granted.

21

**VI.    COUNT III OF PLAINTIFF'S COMPLAINT ASSERTING AN EQUAL PROTECTION CLAIM UNDER THE FOURTEENTH AMENDMENT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Count III is titled "Violation of Fourteenth Amendment right to equal application of the laws prohibiting retroactive application of statutes to Plaintiff (As to all Defendants)." Plaintiff alleges his right to equal protection was violated by applying the Charter amendment imposing term limits to the mayor's office. Once again, Plaintiff has failed to state a viable cause of action.

As just discussed, the Charter amendment was not applied retroactively, so the factual basis for the claim does not exist. But even aside from that, Plaintiff cannot prevail. The Fourteenth Amendment's guarantee of the "equal protection of the laws" bars governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated with no rational basis for the difference. *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023). Here, no fundamental right is burdened. *Kowall v. Benson, supra*, 18 F.4th at 547–548, explaining there is no fundamental right to run for public office. Plaintiff's complaint does not allege the term limits provision of the Charter targets a suspect class. That leaves Plaintiff with the third option. To prevail on that claim Plaintiff must show that (1) the City "intentionally treated"

22

him "differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Green Genie, supra*, 63 F.4th at 527 quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). Here, Plaintiff cannot demonstrate that anyone "similarly situated" was treated differently. The term limit provision at issue applies only to the mayor's office, and there is no allegation that any other person in Plaintiff's position has been allowed to be on the ballot. And again, Plaintiff's claim is subject to rational basis review. For the same reasons Plaintiff's due process claim fails, his equal protection claim also fails. The term limits provision of the Charter is rationally related to legitimate governmental interests.

### VII.   COUNT IV OF PLAINTIFF'S COMPLAINT ASSERTING A CLAIM FOR DECLARATORY JUDGMENT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In *Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 456-457 (6th Cir. 2021), the Sixth Circuit held that to obtain a declaratory judgment "a plaintiff must demonstrate 'an actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial decision.' *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (citation omitted). Here, Plaintiff's claim for declaratory judgment is not an independent cause of action but is a remedy for

alleged constitutional violations. The Sixth Circuit explained in *Keene Group, Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 310 (6th Cir. 2021):

> The second count of the amended complaint was for a declaratory judgment. The district court construed this count as a requested remedy, rather than a separate cause of action, and dismissed it in light of its finding that no constitutional violations occurred. Plaintiff does not challenge this analysis on appeal or argue that its request for a declaratory judgment can be maintained independent of its constitutional claims.

"The point of the [Declaratory Judgment] statute is to create a remedy for a preexisting right enforceable in federal court. It does not provide 'an independent basis for federal subject matter jurisdiction.' *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007); see *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)." *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014). Since Plaintiff's constitutional claims in counts one, two, and three fail to state a claim upon which can be granted, there is no basis to maintain the claim for declaratory relief.

## RELIEF REQUESTED

Defendant Warren City Council requests the Court dismiss Plaintiff's complaint with prejudice for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), or alternatively dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

DATED: August 7, 2023                    PLUNKETT COONEY


   */s/ Michael S. Bogren*
Michael S. Bogren (P34835)
Jeffrey M. Schroder (P63172)
PLUNKETT COONEY, P.C.
Attorneys for Warren City Council
38505 Woodward Ave. #100
Bloomfield Hills, MI 48304
(248) 901-4000
mbogren@plunkettcooney.com
jschroder@plunkettcooney.com

Open.28127.02392.31554379-1

25