UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES R. FOUTS,

               Plaintiff,

                                   Case No.  23-11868

   vs.                         HON.  GEORGE CARAM STEEH

THE WARREN CITY COUNCIL,
THE WARREN CITY ELECTION
COMMISSION, ANTHONY G.
FORLINI in his official capacity as
MACOMB COUNTY CLERK, and
SONJA D. BUFFA in her official
capacity as WARREN CITY CLERK.

               Defendants.

_____/

OPINION AND ORDER GRANTING WARREN CITY
COUNCIL'S AND MACOMB COUNTY CLERK'S MOTIONS TO
DISMISS (ECF NOS. 10 and 12) AND DENYING PLAINTIFF'S
<u>MOTION FOR EXPEDITED REVIEW AS MOOT (ECF NO. 8)</u>

Plaintiff James Fouts is the current mayor of the City of Warren

(Warren), serving his fourth term in office. In 2020, the electorate of Warren

adopted an amendment to the Warren City Charter (Charter) that imposes

a three-term limit on the office of mayor. This case arises out of plaintiff's

desire to run for a fifth term as mayor in November 2023. Plaintiff alleges

that defendants Warren City Council (Council), Warren City Election

Commission, the Warren City Clerk, and the Macomb County Clerk,

- 1 -

violated his constitutional rights by applying the Charter amendment's term limit retroactively to preclude him from appearing on the ballot for the August 8, 2023 primary. Plaintiff's lawsuit, brought under 42 U.S.C. § 1983, alleges a violation of his First Amendment rights of political speech, his Fifth Amendment[1] due process rights, and his Fourteenth Amendment right to equal application of the law. As a remedy, plaintiff requests that the Court order the results of the August 8, 2023 primary be decertified and that a special election be held prior to the general election that would include plaintiff as a candidate. Plaintiff also seeks money damages to compensate him for the constitutional, emotional, and economic damages he suffered because of defendants' unlawful conduct.

The matter is before the Court on three motions: the Warren City Council's motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) for lack of jurisdiction and failure to state a claim upon which relief may be granted, ECF No. 10; Macomb County Clerk Anthony Forlini's motion to dismiss, ECF No. 12; and plaintiff's motion to expedite review, ECF No. 8. Defendants Warren City Election Commission and Warren City Clerk Sonja Buffa did not file a separate motion. In their Answer, they describe their

---

[1] Because plaintiff's procedural due process claim is based on actions taken by state actors, it comes under the protection of the Fourteenth Amendment and will be analyzed as such. *Scott v. Clay County, Tenn.*, 205 F.3d 867, 873 (6th Cir. 2000).

participation in the case as procedural for purposes of expedient execution of any order that may be issued by the Court. Additionally, as they are named in their official capacities, they request that the Court find them immune from damages. ECF No. 23, PageID.208-09.

Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2).  As set forth below, the Court finds that it has subject matter jurisdiction over plaintiff's complaint, but that plaintiff fails to state any claim upon which relief may be granted. Therefore, defendants' motions to dismiss are GRANTED and the motion to expedite review is DENIED as moot. The case will be dismissed in its entirety.

## FACTUAL ALLEGATIONS

This case focuses on an eligibility requirement for mayoral candidates in Warren – specifically term limits. Term limits for certain elected offices were first introduced in Warren in 1998. The voters were asked to approve a resolution to amend the Charter to provide that the mayor, council members, clerk and treasurer could not hold office for the greater of three terms or 12 years in a particular office. The ballot proposal provided that the limitation began with the term resulting from the November 1995 election. The resolution passed and the Charter was amended.

- 3 -

In 2016, when plaintiff was serving his third term as mayor, the electorate of Warren again voted to amend the Charter. The proposal was to increase the term limit for the office of mayor from the greater of three terms or 12 years to the greater of five terms or 20 years. The ballot proposal specified that any years or terms served prior to the amendment would be counted. The measure passed and the Charter was amended.

Then in 2020, while plaintiff was in his fourth term, the Council proposed an amendment to the Charter to change the term limit for the office of mayor back so it would be the same as other city elected offices. The ballot proposal specified that "[a]ny terms or years served prior to this amendment are included." The amendment passed and the Charter now reads:

> A person shall not be eligible to hold the position of mayor, city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that office.

Warren City Charter, § 4.3(d).

Warren scheduled a primary election for August 8, 2023, to determine the candidates for mayor in the upcoming general election. Plaintiff sought to run for a fifth term as mayor, but the Council believed he was ineligible to run under the term limit provision in the Charter. Council brought a mandamus action against the Macomb County Clerk, the Warren City

Clerk, and the Election Commission to require them to exclude plaintiff from the 2023 primary ballot. The Macomb County Circuit Court found that it was unclear whether the term limit could be applied to plaintiff, and therefore determined he was eligible to run for re-election in 2023. *Warren City Council v. Buffa*, No. 2023-000611-AW, 2023 WL 3766706, at *1, 5 (Mich.Cir.Ct. Mar. 23, 2023).

On April 21, 2023, in a published opinion, the Michigan Court of Appeals reversed the Circuit Court and ordered that plaintiff's name be removed from the ballot. *Warren City Council v. Buffa*, No. 365488, 2023 WL 3046530, __ N.W.2d __ (Mich. Ct. App. Apr. 21, 2023). The basis of the Michigan Court of Appeals' decision is that the term limits in the 2020 Charter amendment are not ambiguous and provide that all prior terms are to be counted. The court found that because plaintiff had already served more than three complete terms, he was ineligible to run for re-election. *Id.* at * 5-6. On May 17, 2023, the Michigan Supreme Court denied defendants' application for leave to appeal. 989 N.W.2d 679 (Mich. 2023).

On August 2, 2023, six days prior to the primary election, plaintiff filed this lawsuit alleging that defendants are violating his federal constitutional rights by proposing the 2020 amendment and by applying the term limits to prevent him from running for another term as mayor.

STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction challenges the sufficiency of the pleading itself. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). In determining whether "the plaintiff has alleged a basis for subject matter jurisdiction, . . . the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* "[T]he plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Once a Court is satisfied that it has jurisdiction to hear the merits of a case, Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's

pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Twombly*, 550 U.S. at 555).

<u>LAW AND ANALYSIS</u>

I.    <u>Subject Matter Jurisdiction</u>

Subject matter jurisdiction is a threshold issue that the Court must address and resolve prior to reaching the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). The moving defendants argue that the Court lacks subject matter jurisdiction over plaintiff's case under 28 U.S.C. § 1257(a) and the *Rooker-Feldman* doctrine. This statute, as interpreted, provides an exception to federal jurisdiction in "limited circumstances" where there is a challenged state judgment involved in the

federal action, and an effort to overturn the judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 287 & n.2, 293 (2005).

The exception to jurisdiction has been described as applying to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 291. Defendants contend that the source of plaintiff's alleged injury is the Michigan Court of Appeals' decision, and that federal district courts do not have jurisdiction to resolve an appeal of a state court's final judgment. 28 U.S.C. § 1257(a); *Hohenberg v. Shelby County, Tenn.*, 68 F.4th 336, 338 (6th Cir. 2023) (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 & n.16 (1983).

The Court finds that the constitutional injuries alleged by plaintiff are not a challenge to the prior state judgment. The state court interpreted the 2020 amendment to determine whether terms served prior to its enactment were intended to be counted toward term limits. The court resolved that issue in favor of counting all prior terms, thereby concluding that plaintiff was ineligible to run for a fifth term. *Buffa*, 2023 WL 3046530 at * 5-6. The federal complaint asserts that defendants' application of the 2020

- 8 -

amendment's term limits as to him, violates his constitutional rights. Plaintiff's federal lawsuit does not ask, or require, the Court to "review and reject' the state court's judgment. For the reasons discussed further below, the Court finds that it has subject matter jurisdiction over plaintiff's complaint.

In determining whether the exception to subject matter jurisdiction applies, it is often helpful to look at the source of the injury alleged. Generally speaking, "[i]f the source of the injury is that state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

Plaintiff describes the source of his injury as two actions taken by Council. The first is when it proposed the 2020 amendment that would render a person ineligible to hold the office of mayor after serving more than the greater of three complete terms or twelve years in that office. Plaintiff alleges that counting terms that began before the amendment was enacted violates his constitutional rights. The second source of plaintiff's alleged injury is Council's efforts to enforce the term limits retroactively against him. While the state court construed the same Charter provision at

issue in this case, it did so only to interpret whether prior terms were intended to be counted. And although plaintiff is not shy in opining that the state court got the issue wrong, the decision itself is not the source of plaintiff's alleged injury.

It can also be helpful to look at the remedy sought by plaintiff. *See Hohenberg*, 68 F.4th at 340 (where the relief ordered was the appointment of receivers, the ordered sale of property and holding claimants in contempt, the court held that "[d]amages would not amount to 'review and rejection' of any of the judgments binding the claimants."). Plaintiff's request for a declaration that counting his terms which commenced prior to the enactment of the 2020 amendment is a violation of his First and Fourteenth Amendment rights, and for an award of money damages, does not require "review and rejection" of the state court judgment. Again, the correctness of the prior judgment is not relevant to whether counting plaintiff's prior terms is a violation of his constitutional rights. Plaintiff also requests that if he prevails, this Court should order a special primary election with his name on the ballot. This is a remedy which would seem to conflict with the state court order that his name *not* appear on the ballot. The Sixth Circuit has addressed such situations by pointing out that Section 1257(a) "applies only when a state-court loser seeks 'review and rejection'

of a specific prior judgment, not when his victory would undermine a judgment's legal underpinnings." *Id.*, 68 F.4th at 341 (citing *Exxon*, 544 U.S. at 284).

The bottom line is that plaintiff is not asking this court to review the state court judgment because it was wrongly decided. His claim is that the term limits, as applied to exclude him from being a candidate for mayor, violate his federal constitutional rights and he seeks redress for those violations. The Court finds that it has subject matter jurisdiction over plaintiff's complaint.

II.   <u>Issue Preclusion</u>

Defendants next maintain that plaintiff is precluded from relitigating whether he should be included as a candidate for mayor because that issue was already determined by the Michigan Court of Appeals. The elements of collateral estoppel, or issue preclusion, are: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment,' (2) the parties or privies "'must have had a full [and fair] opportunity to litigate the issue,'" and (3) "'there must be mutuality of estoppel.'" *Mecosta County Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co*., 509 Mich. 276, 283 (2022) (citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-684 (2004)).

- 11 -

As to the first element, defendants contend that the question of whether the 2020 mayoral term limit amendment applies to plaintiff's prior terms was litigated and answered in the state case and was essential to that court's judgment. However, the state court was not asked, and did not address, the issue before this court – whether counting plaintiff's prior terms to determine his eligibility as a candidate for mayor violates his constitutional rights. The issues this Court is being asked to decide were not determined by the state court, so this is not a situation where collateral estoppel applies.

Additionally, the second element requires that the parties or their privies had a full and fair opportunity to litigate the issue in the prior court. Plaintiff was not a party in the state court action, but defendants assert that he was in privity to Clerk Buffa because their interests in placing plaintiff on the ballot were identical. "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v. State*, 470 Mich. 105, 122 (2004). In state court, Buffa was advocating as to the proper interpretation of the 2020 amendment so she could execute her ministerial duties as Clerk. Plaintiff's constitutional claims were not represented by any parties in the prior action. The Court finds that collateral estoppel does not apply to

preclude plaintiff from stating a claim upon which relief can be granted in this Court.

Satisfied that it has jurisdiction, the Court turns its consideration to defendants' motion to dismiss plaintiff's three constitutional counts for failure to state a claim for relief.

III.   Count I – First Amendment

Plaintiff's First Amendment claim asserts that his rights to free speech and association are being violated because the term limits in the 2020 amendment to the Charter are being applied to him retroactively to keep him off the ballot for mayor. The Court finds that there is no fundamental right to run for office, and Warren has a rational basis for imposing term limits for the office of mayor. For the reasons more fully explained below, defendants' motion to dismiss the First Amendment claim will be granted.

Term limits are part of a state's power "to prescribe qualifications for its officeholders," rather than a "regulatory procedure relating to the election process." *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 924 (6th Cir. 1998). Along with a state's right to impose neutral candidacy qualifications such as age or residence, term limits are another available tool. *Id*. at 932-24; *see also, Gregory v. Ashcroft*, 501 U.S. 452, 472 (1991). The Sixth Circuit addressed term limits in Michigan in a challenge brought

by state legislators. Distinguishing restrictions to voter access, the court

stated that term limits restrict eligibility for office, and since candidates have

no constitutional right to run for office, found they are constitutionally

permissible:

> This [term limit] qualification gives us no reason to apply
> heightened scrutiny, because candidates do not have a
> fundamental right to run for office. *Clements v. Fashing*, 457
> U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) ('Far
> from recognizing candidacy as a fundamental right, we have
> held that the existence of barriers to a candidate's access to the
> ballot does not of itself compel close scrutiny.' (cleaned up));
> *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989) ('Running
> for office is not a fundamental right.' (cleaned up)). Without
> such a fundamental right at issue, we revert to the baseline:
> rational basis.

*Kowall v. Benson*, 18 F.4th 542, 547–48 (6th Cir. 2021).

Plaintiff contends he is not challenging the constitutionality of term

limits in general, but only as applied retroactively to himself. He argues that

his First Amendment rights are implicated because "[h]is right to support a

candidate of his choice – including himself – cannot be arbitrarily

restricted." ECF No. 18, PageID.148 (citing *Mogk v. City of Detroit*, 335

F.Supp. 698, 700 (E.D. Mich. 1971). In Mogk, the federal district court

reviewed a challenge to the three-year residency requirement for

candidates for the City of Detroit Charter Commission. The court

determined that the requirement did not pass either the rational basis test

or the more strenuous and fact-intensive compelling state interest test applied in ballot-access cases. *Id*. at 700-701. After *Mogk* was decided, the Supreme Court has made clear that candidate qualification cases are not subject to the same First Amendment protections as voter qualification cases. "Far from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Clements v. Fashing*, 457 U.S. 957, 963 (1982). Therefore, rational basis review applies to plaintiff's First Amendment challenge.

Addressing the argument that candidates have the right to vote for themselves, as the candidate of their choice, the Sixth Circuit held: "Just as candidates have no fundamental right to run for office, voters have no fundamental right to 'vote for a specific candidate or even a particular class of candidates.'" *Kowal*, 18 F.4th at 549. In the absence of a fundamental right, "their voter claims fail on rational-basis review …" *Id*.

Plaintiff's final argument is that there is no rational basis for changing his term limit from three terms to five terms, and then back to three terms. However, in resolving to submit a ballot question to the voters in 2020 to amend the Charter to limit the mayor's term, the Council noted "that a governmental system with a balanced distribution of power would be

served best by equal term limits for all elected officials." *See, Buffa*, 2023 WL 3046530, at *2. The 2020 amendment did just that, applying the same "greater of three (3) complete terms or twelve (12) years in that office" eligibility requirement to candidates for the office of mayor, city council, city clerk and city treasurer.

To the extent that plaintiff argues the Council misapplied state law in counting the terms he served prior to passage of the 2020 amendment, the Michigan Court of Appeals and the Michigan Supreme Court have issued a final judgment on that issue. As discussed in Section I above, this Court does not have subject matter jurisdiction to review a challenge to a final state court judgment under 28 U.S.C. § 1257(a).

The Court finds that the term limits at issue, as applied to plaintiff, are rationally related to their stated goal of achieving a balanced distribution of power among elected officials. Therefore, plaintiff fails to state a claim for which relief can be granted under the First Amendment.

IV.   Count II – Fourteenth Amendment Due Process

Plaintiff's due process argument is that counting his terms served prior to the 2020 amendment to determine him ineligible to run for mayor, denies plaintiff of a vested property interest without due process of law.

However, because there is no vested property interest in being a candidate for political office, the Court grants defendants' motion to dismiss this claim.

To assert a procedural due process claim, a plaintiff must show that he was deprived "of a protected property interest without 'adequate predeprivation procedural rights.'" *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 467 (6th Cir. 2023) (citing *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019)). To qualify as a protected property interest, a person must have "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Hasanaj v. Detroit Pub. Sch. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022).

"The U.S. Constitution does not create property interests. To warrant protection, the state law must create a legitimate entitlement to a benefit or a justifiable expectation of receiving it." *Williams v. City of Detroit, Michigan*, 54 F.4th 895, 899 (6th Cir. 2022) (citation omitted). To receive protection under the Due Process Clause, "a property interest must be a vested right." *Detroit v. Walker*, 445 Mich. 682, 698–699 (1994). This requires something "more than a mere expectation based on an anticipated continuance of the present laws." *Gillette Commercial Operations North Am. & Subsidiaries v. Dep't of Treasury*, 312 Mich. App. 394, 878 N.W.2d 891, 909 (2015).

Unfortunately for plaintiff, neither Michigan nor federal law recognizes a vested property interest in being a candidate or in holding public office. *See*, *People v. Smith*, 502 Mich. 624, 638 (Mich. 2018) ("the law has long been clear that there is no property interest in holding public office."); T*aylor v. Beckham*, 178 U.S. 548, 576 (1900); *Snowden v. Hughes*, 321 U.S. 1, 7 (1944); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972); *Houchens v. Beshear*, 850 F. App'x 340, 343 (6th Cir. 2021). Plaintiff maintains that he nevertheless has a vested right to run for office because he was "already legally certified to be on the ballot by the clerk Defendants." ECF No. 18, PageID.150. However, the Michigan Court of Appeals found that was an unauthorized act and ordered plaintiff's name removed from the ballot. Michigan courts have long held unauthorized acts do not give rise to a vested right. *See, e.g.*, *Fass v. City of Highland Park*, 326 Mich. 19, 31 (1949) ("Such acts being unauthorized and in express contravention of ordinance provisions of the city, plaintiffs acquired no vested right to use their property for a purpose forbidden by law.").

Plaintiff next asserts that counting his terms served before the 2020 amendment was enacted attaches a new "legal disability" to him because it prevents him from running based on his prior terms served. Complaint, ¶ 75 ("Plaintiff's disqualification from both the candidacy and the office of the

Mayor of the City of Warren indisputably constitutes a legal disability.");

Complaint ¶ 93 ("Plaintiff has a right under the Fifth Amendment of the

United States constitution to not suffer retroactive legal disabilities arising

out of past considerations."). This argument does not save plaintiff's due

process claim. First, the Michigan Court of Appeals held that the term limit

provision applied to plaintiff prospectively, as opposed to retrospectively.

*Buffa*, 2023 WL 3046530, at *11 ("Additionally, a prospective application of

the charter is applied here, and its reliance on antecedent events does not

run afoul of the general rule against retroactivity."). Second, plaintiff does

not cite any case law, nor is the Court aware of any, that recognizes the

inability to be a candidate for elected office as a legal disability that entitles

a person to due process.

Without a vested property interest at stake, there can be no

procedural due process violation. Plaintiff's due process claim fails as a

matter of law.

V.     Count III – Fourteenth Amendment Equal Application of the Laws

Plaintiff's final constitutional claim is that he is being denied equal

application of the laws in violation of the Fourteenth Amendment's Equal

Protection Clause. Because plaintiff cannot show that the term limits are

applied to him differently than they are applied to others who are similarly situated, he fails to state a claim for which relief can be granted.

The Fourteenth Amendment's guarantee of the "equal protection of the laws" bars governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated with no rational basis for the difference. *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023). There is not a fundamental right to run for public office, and plaintiff has not alleged that proposal 2020 targets a suspect class. Therefore, to prevail on his allegation of government discrimination, plaintiff must show that (1) the City "intentionally treated" him "differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Id*. at 527 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff contends that the Council discriminated against him by designing the 2020 amendment to bar his eligibility for re-election, while it does not bar any of the other Warren elected officials. "To be 'similarly situated' for purposes of an equal-protection claim, the plaintiff and the comparator must be alike 'in all relevant respects.'" *Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1152 (6th Cir.), cert. denied, 143 S. Ct.

448 (2022) (citation omitted). The 2020 amendment applies only to the

mayor's office and was intended to bring term limits for mayor in line with

those for other elected officials. Plaintiff does not identify any other person

in his position who has been allowed to be on the ballot. Because no other

candidates for mayor, or any elected office in Warren, have served the

maximum time in office, plaintiff cannot demonstrate that anyone "similarly

situated" was treated differently.

Plaintiff, who is currently serving his fourth term as mayor, is not

similarly situated to other candidates who have not already served at least

three completed terms in office. In addition, the term limits provision at

issue is rationally related to legitimate governmental interests. For these

reasons, plaintiff's Fourteenth Amendment equal protection claim fails.

VI.   Count IV – Declaratory Judgment

Plaintiff's fourth count alleges a claim for declaratory judgment.

However, plaintiff fails to demonstrate an "actual injury traceable to the

defendant[s] [that is] likely to be redressed by a favorable judicial

decision[]", therefore he is not entitled to declaratory judgment as a

remedy. *See, Keene Group Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306,

310 (6th Cir. 2021) (construing count for declaratory judgment as a

requested remedy and dismissing that count after finding no constitutional violations occurred). Count IV will therefore be dismissed.

VII.    *Purcell* Doctrine and Laches

Having concluded that plaintiff fails to state any claim for which relief can be granted, the Court need not address defendants' argument that plaitiff's lawsuit is untimely and that his request for injunctive relief is barred by the *Purcell* principle and/or laches.

VIII.   Qualified Immunity of Clerks

Defendant clerks assert qualified immunity as to plaintiff's claims for monetary damages. "Qualified immunity is an affirmative defense" to a §1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). Because the Court finds that plaintiff has failed to state a constitutional claim for which relief may be granted, and that the case shall be dismissed, there is no claim to which the affirmative defense of qualified immunity can be asserted.

CONCLUSION

Now, therefore, for the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that Warren City Council's motion to dismiss (ECF No. 10) is GRANTED.

IT IS HEREBY FURTHER ORDERED that Anthony Forlini's motion to dismiss (ECF No. 12) is GRANTED.

IT IS HEREBY FURTHER ORDERED that James Fout's motion for expedited review (ECF No. 8) is DENIED as moot.

IT IS HEREBY FURTHER ORDERED that plaintiff's complaint shall be DISMISSED in its entirety.

It is so ordered.

Dated:  September 5, 2023

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 5, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk

---